IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                              **Case No. 09-40049-01-RDR**

GREGORY D. CROSBY,

        Defendant.

## MEMORANDUM AND ORDER

This matter is presently before the court upon defendant's pro se motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.[1] Having carefully reviewed the briefs of the parties, the court is now prepared to rule.

I.

Gregory D. Crosby was charged with attempted bank robbery in violation of 18 U.S.C. § 2113(a) on May 22, 2009. At his initial appearance before the magistrate, Crosby indicated that he wanted to represent himself. The court appointed Marilyn Trubey of the Federal Public Defender's Office to represent Crosby. The

---

[1] Following the decision of the Tenth Circuit on defendant's direct appeal, the defendant, proceeding pro se, filed a motion for reconsideration and for relief based upon newly discovered evidence under Fed.R.Crim.P. 60(b). The court notified the defendant that the claims raised in his motion constituted claims under § 2255 and indicated that his motion should be recharacterized as a § 2255 motion. The court allowed the defendant to inform the court that he wished to withdraw his motion for reconsideration or submit a § 2255 motion. The defendant chose to file a § 2255 motion. Accordingly, the court shall deny defendant's motion for reconsideration as moot.

defendant was indicted on June 10, 2009 with attempted bank robbery in violation of 18 U.S.C. 2113(a) and conveying false information concerning explosive devices in violation of 18 U.S.C. § 1038.

At the hearing before this court on July 10, 2009, Crosby was questioned about his desire to represent himself.  Following a lengthy colloquy with the defendant, the court determined that Crosby had knowingly and voluntarily waived his right to counsel.  The court allowed Crosby to represent himself.  The court, however, appointed Ms. Trubey to assist Crosby as standby counsel.  At another hearing before the court on October 26, 2009, Crosby indicated that he no longer wished to represent himself.  He stated that he wanted either Ms. Trubey or some other counsel to represent him.  The court then appointed Ms. Trubey to represent Crosby because she had an understanding of the factual background and issues in the case.  At that time, the trial of the case was scheduled for November 16, 2009.  On November 5, 2009, Ms. Trubey sought to withdraw as counsel for Crosby.  The court had also received a letter from Crosby indicating that he no longer wished to be represented by Ms. Trubey.  The court subsequently allowed Ms. Trubey to withdraw and appointed Mark Bennett as counsel for Crosby.  The trial was continued to December 7, 2009.  On December 8, 2009, after a two-day trial, the jury convicted Crosby of attempted bank robbery and conveying false information.

The court sentenced the defendant to a term of imprisonment of

240 months for attempted bank robbery and 22 months for conveying false information to be served consecutive to the attempted bank robbery sentence.  Crosby filed a notice of appeal.  On appeal, his appointed counsel, John Jenab, raised two issues concerning his conviction for attempted bank robbery.  First, he contended that the jury instructions provided by the court were improper.  He argued that the court's instruction on intimidation allowed the jury to convict on an attempt to intimidate the victims, rather than proof of actual intimidation as 18 U.S.C. § 2113(a) requires.  Second, he asserted that the evidence at trial was insufficient to support Crosby's conviction for attempted bank robbery because the evidence did not prove actual intimidation.  The Tenth Circuit rejected both arguments on March 23, 2011, and affirmed Crosby's conviction of attempted bank robbery.  United States v. Crosby, 416 Fed.Appx. 776 (10th Cir. 2011).  Crosby filed the instant motion on July 8, 2011.

II.

In his motion, Crosby raises seven grounds for relief.  He initially contends that he received ineffective assistance of counsel in the following ways:  (1) Ms. Trubey failed to conduct an adequate investigation or interview potential witnesses; (2) Mr. Bennett failed to investigate or interview several witnesses; (3) Mr. Bennett failed to object to the intimidation instruction at trial; (4) Mr. Bennett failed to "investigate the issue of

3

inconclusive evidence presented by the government," including "contaminant evidence," and "the fact that there was no DNA evidence found at the crime scene relating to [him];" and (5) Mr. Bennett never investigated "the fact of the jobs application [he] had explain[ed] to him, and his [whereabouts] the day of the alleged robbery." He then raises the following related arguments: (1) denial of access to a law library as a pro se litigant; and (2) the erroneous denial of his motion to dismiss the indictment. Finally, he contends that newly discovered evidence warrants relief under § 2255.

### III.

A federal prisoner may only obtain relief under § 2255 if his sentence (1) was imposed in violation of the Constitution or federal laws, (2) was imposed by a court without jurisdiction to do so, (3) was in excess of the maximum permitted by the law, or (4) is otherwise subject to attack. 28 U.S.C. § 2255(a). In order to obtain relief under § 2255 on the basis of constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 637–38 (1993). In order to obtain relief on the basis of nonconstitutional error, the petitioner must show a fundamental defect in the proceedings resulting in a complete miscarriage of justice or an error so egregious that it amounted to a violation of due process. Reed v.

Farley, 512 U.S. 339, 353-354 (1994).  If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); United States v. Galloway, 56 F.3d 1239, 1240 n. 1 (10th Cir. 1995); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").  To be entitled to an evidentiary hearing, the defendant must allege facts which, if proven, would entitle him to relief.  See Hatch v. Oklahoma, 58 F.3d 1447, 1471 (10th Cir. 1995), cert. denied, 517 U.S. 1235 (1996).  "[T]he allegations must be specific and particularized, not general or conclusory."  Id.  The court finds that a hearing on the defendant's motion is not necessary.  The court finds, for the reasons stated in this opinion, that the materials already in the record conclusively show that the defendant is not entitled to relief on any of his claims.

IV.

"The benchmark for judging any claim of ineffectiveness must

be whether the counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984). To obtain relief on an ineffective assistance of counsel claim, a defendant must satisfy a two-pronged test. First, he "must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, he must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. To meet the first prong, a defendant must show that defense counsel's performance was neither reasonable under prevailing professional norms nor sound trial strategy. To meet the second prong, petitioner must show a reasonable probability that, but for the deficiencies in counsel's conduct, the result of the case would have been different. A probability is reasonable if it is sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. The court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." Cooks v. Ward, 165 F.3d 1283, 1292-93 (10th Cir. 1998), cert. denied, 528 U.S. 834 (1999); see also Davis v. Executive Director of Dept. of Corrections, 100 F.3d 750, 760 (10th Cir. 1996) (noting that court can proceed directly to prejudice without addressing performance), cert. denied, 520 U.S. 1215 (1997).

There is a strong presumption that counsel provided effective

assistance of counsel, and the defendant has the burden of proof to overcome that presumption. United States v. Cronic, 466 U.S. 648, 658 (1984). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. The reasonableness of the counsel's performance must be evaluated at the time of the alleged error. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision . . . must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" Hatch v. State of Oklahoma, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir. 1983)), cert. denied, 517 U.S. 1235 (1996). Neither hindsight nor success is the measure of the reasonableness of counsel's challenged conduct. Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir.), cert. denied, 522 U.S. 844 (1997).

When the basis for an ineffective assistance of counsel claim is the failure to raise an issue, the court must look to the merits of the omitted issue. United States v. Orange, 447 F.3d 792, 797 (10th Cir. 2006). If the omitted issue is without merit, then counsel's failure to raise it is not ineffective assistance because the failure is not prejudicial. Id. "[T]he omission of a 'dead-bang winner' by counsel is deficient performance which may result in prejudice to the defendant. A 'dead-bang winner' is an issue which was obvious from the trial record and one which could have

resulted in reversal on appeal." United States v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009) (internal citation and quotations omitted).

A.

The facts in this case were summarized by the Tenth Circuit as follows:

> On May 21, 2009, Crosby drove up to the drive-through window at a federally insured bank in Topeka, Kansas, and passed a note to the teller demanding cash. The robbery note read: "This is a robbery. Give me all large bills. 100s, 50s, no bait money, no alarms, and give note back and do it fast." The bank lobby was closed. The teller did not dispense any money to Crosby, but discussed the note with his fellow tellers who set off the alarm, called the police, and jotted down Crosby's license number. When he did not receive any money after waiting for a minute or less, Crosby drove away from the bank. He was soon apprehended in a nearby store parking lot. When approached by police officers, he claimed he had a bomb in his car and had placed another bomb in the federal courthouse. No bombs were found at either location.

Crosby, 416 Fed.Appx. at 777 (citation to record omitted). The court will address other facts in the case as we consider the arguments made by Crosby.

B.

The court shall begin with the ineffective assistance of counsel claims raised by Crosby. Crosby contends that Ms. Trubey, his first attorney, was ineffective because she failed to conduct an adequate investigation or interview potential witnesses. He further argues that Mr. Bennett, his second lawyer who acted as trial counsel, failed to investigate several witnesses.

These claims fail under both prongs of Strickland. Crosby has failed to show how either counsel performed deficiently because he has not provided any facts to support his assertions. In his original motion, he failed to identify any witnesses that he asked his attorneys to interview or call, and he does not relate what the content of their testimony would have been. In his reply brief, he mentions only the following: "A C Sutherland whom had pick Mr. Crosby up a couple days before this alleged robbery took place did in fact buy Mr. Crosby a ticket to Minnesota." Crosby fails to indicate how this testimony would have impacted his trial. He does not indicate why this particular information would likely have changed the outcome of the trial. Without more, Crosby has failed to show that either counsel was ineffective in failing to investigate or interview potential witnesses.

B.

Crosby next argues his trial counsel was ineffective in failing to object to Jury Instruction No. 7, the "intimidation" instruction. He suggests he was prejudiced "because had the jury knew the intimidation clause per 18 U.S.C. 2113(a) the out come may have been different."

In order to convict a defendant under 2113(a), the government must show beyond a reasonable doubt, inter alia, that the defendant attempted to take the money, property or thing of value "by force and violence or intimidation." The court proposed the following

9

definition of "intimidation" in Instruction No. 7:

> The "intimidation" must be caused by an act knowingly and intentionally done or statement knowingly and intentionally made by the defendant, which was done or made in such a manner or under such circumstances that would produce such a reaction or such fear of bodily harm in a reasonable person. The government need not prove actual fear on the part of any person.

Contrary to Crosby's assertion, Mr. Bennett did object to this instruction on the basis that it did not sufficiently explain the intimidation element and allowed the jury to find the defendant guilty even if the tellers were not actually intimidated. The court rejected Mr. Bennett's argument.

On appeal, Crosby objected to the instruction on a slightly different ground. He argued that the instruction "improperly permitted the jury to convict upon proof of an attempt to intimidate the victims, rather than proof of actual intimidation as the statute requires." Crosby, 416 Fed.Appx. at 778. The Tenth Circuit determined that this court did not err in instructing the jury by using this instruction. See id. at 779 ("Viewing instructions 7 & 8 together, and with all the other instructions, they accurately state[d] the governing law and provide[d] the jury with an accurate understanding of the relevant legal standards and factual issues in the case.") (internal quotations omitted). In addition, the Court found that the government did not have to prove that the bank employees were actually intimidated to prove the charge. Id. at 779-81.

Again, Crosby's claim fails under both <u>Strickland</u> prongs. He has not shown that his counsel acted deficiently by failing to object to the instruction because his counsel did indeed object to the instruction on the basis suggested by him. Moreover, he has failed to show prejudice because the Tenth Circuit determined on appeal that this court did not err in instructing the jury by using this instruction on "intimidation."

C.

The court next considers Crosby's contention that his counsel failed "to investigate the issue of inconclusive evidence." In support of this contention, he notes "the fact of petitioner explaining to him about contaminant evidence, and the fact that there was no DNA evidence found at the crime scene relating to the petitioner."

This claim fails for a variety of reasons. The court notes initially that Crosby has failed to provide the court with any information on what "contaminant evidence" his counsel failed to investigate. The court is not certain what Crosby means by "contaminant evidence" and he has failed to explain the meaning of that term. He has neither identified any evidence that was introduced at trial that was contaminated nor indicated what contaminated evidence should have been explored by his counsel.

The court also finds no merit to his suggestion that his counsel failed to note the lack of DNA at the crime scene.

11

Contrary to Crosby's contention, his attorney repeatedly highlighted for the jury that no DNA evidence belonging to his client was found on the evidence.

Crosby has suggested that his counsel failed to have the following matters tested or analyzed: (1) the robbery note for DNA; (2) the handwriting on the robbery note; and (3) his automobile for hazardous chemicals. The court is not persuaded that any of this testing would have made any difference due to the overwhelming evidence that was presented at trial. The government presented three eyewitness bank employees who positively identified the defendant at the bank less than two hours after the robbery occurred, and each made an in-court identification. In addition, Crosby was arrested less than two hours after the robbery in the same vehicle that the robber used to commit the robbery. Here, any decision by counsel not to request the aforementioned testing would have been reasonable because further testing could have inculpated the defendant, yet he was still able to argue that the absence of such evidence rose to the level of a reasonable doubt justifying acquittal. See LaFevers v. Gibson, 182 F.3d 705, 722 (10th Cir. 1999) (counsel was not ineffective for failure to test DNA because even favorable DNA test result would not make a difference); see also United States v. Roberts, 417 Fed.Appx. 812, 823-24 (10th Cir. 2011) (defense counsel's failure to test gun found by police in dumpster for DNA during prosecution for felon in possession of

firearm was not ineffective assistance of counsel because further tests could not exonerate defendant and defense counsel could still argue lack of DNA evidence).

D.

Crosby contends his counsel failed to investigate the fact that he applied for a job on the day of the robbery, perhaps to support an alibi defense. He has once again failed to specifically provide facts to support this claim. He has not indicated what he told his attorney or how it is relevant to the charge made against him. In short, Crosby has failed to allege any facts which, if proved, could entitle him to an evidentiary hearing. Again, due to the overwhelming evidence presented in this case, any failure of Crosby's counsel to investigate this line of defense was non-prejudicial.

V.

Crosby argues he was denied access to the prison law library while he was confined at CCA in 2009 because he had been placed "in strip cell for 12-14 days." He further contends that the court erroneously denied a motion to dismiss the indictment. These arguments are related. He filed the motion to dismiss on August 17, 2009, arguing that the court should dismiss because he had been denied access to the prison law library based upon his confinement in the "strip cell."

Some background is necessary to understand these claims. As

noted previously, the court appointed Ms. Trubey to represent Crsoby following his arrest in this case. Crosby, although represented by counsel, filed pro se motions for discovery and for access to a law library. On July 10, 2009, the court held a hearing on those motions. At that time, Crosby indicated that he wanted to represent himself. The court allowed him to do so, but appointed Ms. Trubey as standby counsel. The court denied as moot Crosby's motion for access to the law library, but directed that he be allowed access to the law library at CCA. Crosby filed the motion to dismiss on August 17, 2009. In it, he argued that the court should dismiss the indictment because (1) he has not been allowed access to legal materials at CCA and has been punished for seeking access to legal materials; (2) the government has not provided him with discovery; and (3) a conflict of interest exists since acting U.S. Attorney Marietta Parker previously prosecuted him in the Western District of Missouri. The court denied his motion to dismiss, finding that he had failed to demonstrate that his efforts at defending himself were being illegally hindered by the officials at CCA. He subsequently requested that counsel be appointed to represent him. The court appointed Mr. Bennett who defended Crosby at trial. On appeal, Mr. Jenab did not raise these claims.

Initially, the court finds that these claims are procedurally barred because they were not raised on direct appeal, and he does

14

not present them as ineffective assistance claims in the instant § 2255 motion.[2]  See United States v. Wiseman, 297 F.3d 975, 979 (10th Cir. 2002).  Although a meritorious claim of ineffective assistance of counsel constitutes cause and prejudice for purposes of surmounting this procedural bar, Crosby does not present this claim as one of ineffective assistance of counsel.

Even if the court were to construe this claim as asserting that Crosby's appellate counsel ineffectively failed to raise it on direct appeal, the court would deny it as non-meritorious.  The court properly found that the defendant was not constitutionally entitled to access to the library because he had waived his right to counsel.  In addition, the court noted that at the time of the order, the defendant had stand-by counsel, and this was "a constitutionally acceptable alternative to a prisoner's demand to access to a law library."

Finally, Crosby cannot show that the denial, even if it occurred, affected the outcome of the proceedings or his trial because he had assistance of counsel after July 10, 2009 until January 28, 2010, including his jury trial, so any denial of library access before July 10, 2009 would have been completely

---

[2] Crosby has contended that he raised this issue on direct appeal in a supplemental brief that he filed pro se with the Tenth Circuit.  There is no indication that this occurred in the Tenth Circuit's opinion.  Nevertheless, it is not relevant here because the court finds no merit to this claim even if it was not defaulted.

15

inconsequential to the outcome of the trial. Moreover, given the overwhelming nature of the evidence presented, Crosby could not have shown any prejudice by the denial of access to the law library for a limited period of time.

VI.

Finally, Crosby asserts that newly discovered evidence warrants relief under § 2255. He claims that on the day of the robbery he had made several trips to the Wal-Mart where he was arrested "and if video surveillance is review[ed] at this store it will show directly that the defendant was wearing . . . 1- black T-shirt/1- black pair of Sweat pants/1- pair of black boots." He suggests that this evidence is important because "[d]uring the course of the trial all the victims identif[ied] the defendant as wearing a White shirt and Blue jeans . . . all of this testimony is incorrect." He further asserts that he mailed the clothing he was wearing on the date of the robbery, consisting of the black garments already described, when he left CCA on April 21, 2010 to his attorney at the time, Mr. Jenab. He maintains that these garments also constitute newly discovered evidence.

The government suggests that this claim is without merit because the evidence noted by Crosby merely corroborates the evidence offered at trial that Crosby was wearing a dark or black shirt when he was arrested at Wal-Mart. The government points to the video evidence taken of Crosby after his arrest as he sat in

and traveled in the patrol car. The government also suggests that the following other evidence offered at trial supports its contention that the defendant was wearing a black or dark shirt after his arrest: (1) his mug shot; (2) testimony offered by a police officer on the clothing worn by Crosby after his arrest; and (3) testimony offered by an FBI agent who interviewed Crosby on the day of his arrest.

The court agrees with the government. The witnesses who testified they saw Crosby at the bank had differing descriptions of the clothes he was wearing at the time of the robbery. Crosby incorrectly states that these witnesses testified that they observed him at the bank wearing a "white shirt and blue jeans." The three witnesses at the bank testified that the robber was wearing: "a dark blue shirt . . . and jeans"--Brandon Correll; (2) a gray shirt--Michelle Johnson; and (3) a white shirt--Sara Tevis. However, the evidence indicating what Crosby was wearing at the time of his arrest was uncontroverted. All of this evidence indicated that Crosby was wearing a black or dark t-shirt. Any new evidence or additional evidence offered by Crosby would have been cumulative or repetitive of the other evidence. Accordingly, Crosby cannot demonstrate this evidence would have affected the outcome of the trial.

## VII.

In sum, the court must deny Crosby's § 2255 motion. The court

17

finds no reason for a hearing because the defendant has not alleged facts, that if proven, would have entitled him to relief. The court shall also deny Crosby's motions for appointment of counsel. There is no constitutional right to appointed counsel in § 2255 matters. United States v. Moya-Breton, 439 Fed.Appx. 711, 716 (10th Cir. 2011). However, 18 U.S.C. § 3006A(a)(2) allows for the appointment of counsel in § 2255 cases to "any person financially unable to obtain adequate representation" when the "interests of justice so require." The decision to appoint counsel is left to the discretion of the court, except when the district court determines that an evidentiary hearing is necessary. Id. The court was not persuaded that appointment of counsel was necessary here. The court did not find that an evidentiary hearing was necessary, and the defendant has failed to convince the court, in light of the overwhelming evidence in this case, that appointed counsel would have been helpful to his cause.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. # 95) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion for consideration (Doc. # 89) be hereby denied as moot.

**IT IS FURTHER ORDERED** that defendant's motions for appointment of counsel (Doc. ## 96, 107) be hereby denied.

**IT IS SO ORDERED.**

Dated this 16th day of March, 2012 at Topeka, Kansas.

                                                  s/Richard D. Rogers
                                                United States District Judge